AGARD & KAIAMA, LLC
Keoni K. Agard      #2649
Dexter K. Kaiama    #4249
700 Richards St., Ste.805
Honolulu, Hawai'i  96813
Telephone: (808) 545-2922

Attorneys for Plaintiff
KENNETH SHIM

UNITED STATES DISTRICT COURT

for the

DISTRICT OF HAWAI'I

| | |
|---|---|
| KENNETH SHIM | ) **CIVIL NO. 10-00156 SOM LEK** |
| | ) |
| Plaintiff, | ) **FIRST AMENDED COMPLAINT; DEMAND** |
| | ) **FOR TRIAL BY JURY; SUMMONS** |
| vs. | ) |
| | ) |
| PNC BANK, N.A., A NATIONAL | ) |
| ASSOCIATION; NATIONAL CITY | ) |
| MORTGAGE; AMERICAN MORTGAGE | ) |
| SERVICES LLC; H. T. NGUYEN; | ) |
| CATHY LEE; and DOES 1 through | ) |
| 20 inclusive, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

## FIRST AMENDED COMPLAINT

Pursuant to court order dated September 14, 2010, Plaintiff

KENNETH SHIM (hereinafter referred to as "Plaintiff"), by and

through his undersigned attorneys, brings the following Complaint

against Defendants PNC BANK, N.A., A NATIONAL ASSOCIATION,

NATIONAL CITY MORTGAGE, AMERICAN MORTGAGE SERVICES LLC, H. T.

NGUYEN, CATHY LEE, and DOE Defendants 1-20 inclusive (hereinafter

collectively referred to as "Defendants"), and allege and avers

as follows:

**INTRODUCTION**

1.    This action is brought by a consumer concerning a predatory mortgage loan by luring an unsophisticated and vulnerable borrower into an unaffordable loan that would result in foreclosure and loss of Plaintiff's home.  Among other wrongful acts, numerous false representations made the loan appear to be affordable when just the opposite was true.

2.    This Complaint is also filed and these proceedings are also instituted under the Real Estate Settlement Procedures Act (hereinafter referred to as "RESPA"), 12 U.S.C. § 2601 et seq., to recover actual and statutory damages, costs and reasonable attorneys' fees by reason of Defendant PNC BANK, N.A., A NATIONAL ASSOCIATION's violations of that Act.

3.    This Complaint also seeks to recover actual and statutory damages, injunctive and other relief, reasonable attorneys' fees and costs pursuant to Hawaii unfair and deceptive trade practices statutes, Hawaii Revised Statutes (hereinafter referred to as "H.R.S.") Chapters 480 and 481A, as well as rescission and actual and punitive damages in connection with fraud and other state claims.

4.    This Complaint seeks injunctive relief to the extent it is needed to avoid and/or prevent the likelihood of injury to Plaintiff during the pendency of this action and to preserve the possibility of effective final relief.

**JURISDICTION**

5.     Jurisdiction arises under 12 U.S.C. § 2614 and 28 U.S.C. §§ 1331 and 1337.  The supplemental jurisdiction of this Court under 28 U.S.C. § 1367 is invoked with claims asserted under H.R.S. Chapters 480 and/or 481A or other state claims. Jurisdiction of the state claims is proper because the factual matters underlying the federal and state claims are closely related, making disposition of all claims proper and necessary.

**PARTIES**

6.     Plaintiff KENNETH SHIM (hereinafter referred to as "Plaintiff") is a natural person residing in the State of Hawaii and an unsophisticated consumer in regards to credit transactions.

7.     Upon information and belief, Defendant PNC BANK, N.A., A NATIONAL ASSOCIATION (hereinafter referred to as "PNC"), is a corporation domiciled in the State of Ohio, and doing business in the State of Hawai`i.

8.     Upon information and belief, Defendant NATIONAL CITY MORTGAGE (hereinafter referred to as "NATIONAL"), is a corporation domiciled in the State of Ohio, and doing business in the State of Hawai`i.

9.     Upon information and belief, Defendant AMERICAN MORTGAGE SERVICES, LLC, who changed its name to AMERICAN CAPITAL LENDING, LLC (hereinafter referred to as "AMERICAN"), was a limited liability company domiciled and doing business in the

3

State of Hawaii, which has since been terminated.

10.   Upon information and belief, Defendant H. T. NGUYEN (hereinafter referred to as "NGUYEN") is a natural person residing in the State of Hawaii who is identified as the agent and manager of AMERICAN.

11.   Upon information and belief, Defendant CATHY LEE (hereinafter referred to as "LEE") is a natural person residing in the State of Hawaii who served as an employee or independent contractor of AMERICAN.

12.   DOE DEFENDANTS 1 through 20, inclusive, are various individuals, partnerships, associations, corporations, and other entities claiming any legal right, title, estate, lien or interest in the Subject Property, as described adverse to Plaintiff's interests.  Plaintiff will make a good faith effort to determine the true names and identities of these parties. Plaintiff reserves the right to amend this Complaint to add such parties as their true identities and capacities are ascertained through discovery or otherwise.

<u>**STATEMENT OF FACTS**</u>

13.   On January 17, 2007, a deed for the property located at 64-717 Keaka Kea Place, Kamuela, HI  96743, also known as Tax Map Key No. (3) 6-4-034-037 was recorded in the Bureau of Conveyances, State of Hawai`i, as Document No. 2007-009066 (hereinafter referred to as "Subject Property").  Plaintiff received an ownership interest in the Subject Property.

4

Plaintiff entered into a loan transaction to purchase the property.  Said Plaintiff is inexperienced and unsophisticated in matters of mortgage and loan financing.

14.  The Subject Property is Plaintiff's principal dwelling.

15.  In late 2006, Plaintiff was told by LEE, the loan officer of AMERICAN that his monthly principal and interest payments for the purchase of the lot and home of the Subject Property would be $2100 per month, however his first mortgage payment totaled $3868 per month, which far exceeded what he was told.

16.  Plaintiff entered into the subject transaction in reliance on the above and other representations made by Defendants.

17.  On or about January 8, 2007, Plaintiff went to the title office in Waimea to sign loan documents with the expectation that the transaction would result in monthly principal and interest payments of $2100.

18.  Despite Plaintiff's expectations and without explanation, NATIONAL had prepared documents and made disclosures for the loan with a substantially larger monthly payment of over $3400.

19.  Prior to January 8, 2007, none of the Defendants had disclosed to Plaintiff that the monthly payment on the loan would far exceed the $2100 per month he had discussed with LEE.

20.  Plaintiff executed all the loan documents presented to

him by LEE.

21.  No explanation was given to Plaintiff regarding the loan documents he was told to sign.  Rather, he was shown where to sign each document and given no time to read what he was signing before the next document was presented to him for execution.

22.  Based upon failures to provide necessary documents and make required disclosures so that Plaintiff could make a fully informed decision, Plaintiff was lured into accepting, and executing a mortgage and note directly resulting in financial benefit to Defendants to the financial detriment of Plaintiff and substantially increasing the likelihood that Plaintiff would default on the mortgage and note.

23.  Plaintiff entered into a consumer transaction with NATIONAL in which NATIONAL extended credit that was subject to a finance charge and which was initially payable to NATIONAL.

24.  In connection with the described loan transaction, NATIONAL acquired a security interest in the Subject Property.

25.  The "Note" executed by Plaintiff in connection with the loan states that the loan was for $422,750 at an interest rate of 8.000% per annum, with monthly principal and interest payments of $3101.99.

26.  Plaintiff did not realize until he received the statement for his first monthly payment of $3868 that he owed substantially more per month than the $2100 payment he expected

6

to make.

27.   Plaintiff could not afford the monthly payments at the outset and he barely made the payments for the first few months.

28.   NATIONAL was the initial servicer of the loan.

29.   At some point, PNC as successor by merger to NATIONAL became the servicer of the loan.

30.   PNC failed to provide required disclosures of the transfer in servicing from NATIONAL to PNC.

31.   Already struggling with the substantially larger monthly payments, Plaintiff was laid off of work in October 2008.

32.   Plaintiff was approved for a loan modification in February 2009.

33.   In August 2009, Plaintiff was given three months to get back to work.

34.   In November 2009, Plaintiff asked to resubmit a request for loan modification.

35.   In March 2010, Plaintiff received a short sale notice from PNC.

36.   On April 23, 2010, PNC conducted a non-judicial foreclosure of the Subject Property pursuant to H.R.S. § 667-5 through 667-10 despite the Complaint filed by Plaintiff on March 18, 2010.

37.   PNC was the highest bid at said sale of $225,250, but PNC did not provide the requisite down payment required pursuant to H.R.S. § 667-5.7 and instead executed a credit bid.

38.   The acts of PNC, NATIONAL, and AMERICAN alleged in the Complaint were performed by their agents, officers, and/or employees within the scope of their actual or apparent authority.

39.   PNC may purport to have an interest in the Property. However, PNC did not conduct a proper sale of the Subject Property pursuant to H.R.S. § 667-5 through 667-10.

40.   PNC is subject to the Mortgage and Note violations of all its predecessors, and is liable to Plaintiff in the same manner as its predecessors.

41.   PNC knew or should have known, at the time it received and/or otherwise obtained its interest in the Property, that its predecessors had failed to provide statutory disclosures and engaged in deceptive and unfair business practices, in violation of Federal and State statutes such that said violations and actions are imputed to PNC.

42.   Violations of federal and state statutes, alleged herein, entitle PNC to an immediate injunction on any ejectment proceedings.

**Count I:   Real Estate Settlement Procedures Act "RESPA" violations**

43.   Plaintiff realleges, as if fully set forth herein, each and every allegation in the preceding Paragraphs of the Complaint.

44.   NATIONAL was the initial "servicer" of the loan as that term is defined in 12 U.S.C. § 2605(i)(2).

45.   At some point, PNC as successor by merger to NATIONAL became the servicer of the loan as that term is defined in 12 U.S.C. § 2605(i)(2).

46.   Plaintiff did not receive a notice from PNC of the transfer of servicing from NATIONAL to PNC as required by 12 U.S.C. § 2605 and § 3500.21 of HUD's Regulation X, Implementing RESPA, 24 C.F.R. 3500.21.

47.   Pursuant to 12 U.S.C. § 2605(f), a servicer that violates § 2605 is liable to the borrower for each violation in an amount equal to the sum of any actual damages to the borrower as a result of the failure, any additional damages the Court may allow in the case of a pattern or practice of noncompliance in an amount not to exceed $1,000.00, and the costs of the action together with reasonable attorneys' fees.

**Count II:  Unfair or Deceptive Acts or Practices - PNC**

48.   Plaintiff realleges, as if fully set forth herein, each and every allegation in the preceding Paragraphs of the Complaint.

49.   Plaintiff is a "consumer" as that term is defined in H.R.S. S 480-1.

50.   The described acts and practices involved "trade and commerce" as that term is used in H.R.S. S 480-2(a).

51.   An unfair or deceptive practice (hereinafter referred to as "UDAP") in the conduct of any trade or commerce is unlawful, pursuant to H.R.S. § 480-2(a).  Certain deceptive trade

practices are also unlawful pursuant to H.R.S. § 481A-3.

52. In connection with the subject loan, NATIONAL engaged in UDAPs that violate H.R.S. §§ 480-2(a) and/or 481A-3, of which PNC is liable for as NATIONAL's successor by merger, including but not limited to:

      1. Targeting financially unsophisticated and otherwise vulnerable consumers for inappropriate credit products.

      2. Failing to adequately disclose the true costs and risks of the subject loan and its inappropriateness for Plaintiff.

      3. Making a loan that resulted in little net economic benefit to Plaintiff with the primary objective of generating fees.

      4. Making the loan based on the value of the collateral, without regard to Plaintiff's ability to repay the loan.

      5. Making inconsistent representations regarding the monthly payment amount in the loan.

53. The conduct described in Paragraphs above caused Plaintiff to suffer injury to his property, including without limitation wrongfully induced payment of money.

54. NATIONAL's failure to include specific notice requirements of the preservation of consumers' claims and defenses required pursuant to 16 C.F.R. § 433 is a per se UDAP violation, of which PNC is liable for as NATIONAL's successor by merger.

55. NATIONAL's failure to provide specific notice requirements where there is a referral, affiliation or business arrangement between Defendants is a per se UDAP violation, of which PNC is liable for as NATIONAL's successor by merger.

56.   NATIONAL's   described   acts   and   practices   offend established   public   policy   and/or   were   immoral,   unethical, oppressive,   unscrupulous,   and/or   substantially   injurious   to consumers, and were therefore unfair in violation of H.R.S. § 480-2(a), of which PNC is liable for as NATIONAL's successor by merger.

57.   NATIONAL's described acts and practices involved material representations, omissions or practices that were likely to mislead consumers   acting   reasonably   under   the   circumstances,   and   were therefore deceptive in violation of H.R.S. §§ 480-2(a) and/or 481A-3, of which PNC is liable for as NATIONAL's successor by merger.

58.   Pursuant to H.R.S. § 480-12, a contract or agreement in violation of H.R.S. Chapter 480 is void and is not enforceable at law or in equity.

59.   Pursuant to H.R.S. § 480-13(b)(1), a consumer who is injured by a UDAP is entitled, for each UDAP, to be awarded a sum not   less   than   $1,000.00   or   threefold   any   damages   he   or   she sustained, whichever sum is the greater, and reasonable attorneys' fees together with costs of suit.

60.   Pursuant to H.R.S. § 480-13(b)(2), a consumer who is injured by a UDAP may bring proceedings to enjoin the unlawful practices and be awarded reasonable attorneys' fees together with costs of suit.

**Count III:   Unfair or Deceptive Acts or Practices - AMERICAN**

61.   Plaintiff realleges, as if fully set forth herein, each

11

and every allegation in the preceding Paragraphs of the
Complaint.

62.  In connection with the subject loan, AMERICAN engaged
in UDAPs that violate H.R.S. §§ 480-2(a) and/or 481A-3, including
but not limited to:

1. Targeting financially unsophisticated and otherwise
vulnerable consumers for inappropriate credit products.

2. Falsely representing and/or failing to adequately
disclose the true costs and risks of the subject loan and its
inappropriateness for Plaintiff.

3. Arranging a loan that resulted in little net
economic benefit to Plaintiff with the primary objective of
generating fees.

4. Arranging the loan based on the value of the
collateral, without regard to Plaintiff's ability to repay the
loan.

5. Falsely representing the monthly payment amount
Plaintiff was required to pay.

63.  The conduct described in Paragraphs above caused
Plaintiff to suffer injury to his property, including without
limitation wrongfully induced payment of money.

64.  AMERICAN's described acts and practices offend
established public policy and/or were immoral, unethical,
oppressive, unscrupulous, and/or substantially injurious to
consumers, and were therefore unfair in violation of H.R.S. § 480-
2(a).

65.  AMERICAN's described acts and practices involved material
representations, omissions or practices that were likely to mislead
consumers acting reasonably under the circumstances, and were

12

therefore deceptive in violation of H.R.S. §§ 480-2(a) and/or 481A-3.

66.   Pursuant to H.R.S. § 480-12, a contract or agreement in violation of H.R.S. Chapter 480 is void and is not enforceable at law or in equity.

67.   Pursuant to H.R.S. § 480-13(b)(1), a consumer who is injured by a UDAP is entitled, for each UDAP, to be awarded a sum not less than $1,000.00 or threefold any damages he or she sustained, whichever sum is the greater, and reasonable attorneys' fees together with costs of suit.

68.   Pursuant to H.R.S. § 480-13(b)(2), a consumer who is injured by a UDAP may bring proceedings to enjoin the unlawful practices and be awarded reasonable attorneys' fees together with costs of suit.

**Count IV** – **Fraud – AMERICAN, NGUYEN, and LEE**

69.   Plaintiff realleges, as if fully set forth herein, each and every allegation in the preceding Paragraphs of the Complaint.

70.   AMERICAN, NGUYEN as the Manager of AMERICAN, and LEE falsely represented the true costs and risks of the described loan and its inappropriateness for Plaintiff.

71.   AMERICAN, NGUYEN as the Manager of AMERICAN, and LEE falsely represented the monthly payment Plaintiff was required to pay.

72.   AMERICAN, NGUYEN as the Manager of AMERICAN, and LEE

13

falsely represented the nature of the documents Plaintiff was told to sign in connection with the loan.

73. AMERICAN, NGUYEN as the Manager of AMERICAN, and LEE made the false representations described herein with knowledge of their falsity.

74. AMERICAN, NGUYEN as the Manager of AMERICAN, and LEE made the false representations in contemplation of Plaintiff's reliance upon them.

75. Plaintiff relied upon those false representations and suffered damage as a result of his reliance upon them.

76. AMERICAN, NGUYEN as the Manager of AMERICAN, and LEE acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or its actions constituted willful misconduct or that entire want of care which raises the presumption of a conscious indifference to consequences to Plaintiff.

77. Plaintiff is entitled to judgment against AMERICAN, NGUYEN as the Manager of AMERICAN, and LEE for actual and punitive damages in an amount to be determined at trial.

**Count V:  Civil Conspiracy**

78. Plaintiff realleges, as if fully set forth herein, each and every allegation in the preceding Paragraphs of the Complaint.

79. AMERICAN and NATIONAL, of which PNC is liable as NATIONAL's successor by merger, entered into an agreement to

accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means, in connection with the described loan.

80.  As set forth above, Plaintiff's Complaint establishes actionable claims based on fraud, which was accomplished through the above-described agreement.

81.  AMERICAN and NATIONAL, of which PNC is liable as NATIONAL's successor by merger, engaged in overt acts pursuant to and in furtherance of the described agreement, including but not limited to making the false representations set forth above.

82.  Plaintiff has suffered injury as the proximate result of the unlawful overt acts performed by said Defendants.

**Count VI:  Aiding and Abetting**

83.  Plaintiff realleges, as if fully set forth herein, each and every allegation in the preceding Paragraphs of the Complaint.

84.  As described above, AMERICAN and NATIONAL, of which PNC is liable as NATIONAL's successor by merger, engaged in wrongful acts which caused injury to Plaintiff.

85.  AMERICAN and NATIONAL, of which PNC is liable as NATIONAL's successor by merger, aided each other in the engagement of those wrongful acts.

86.  Said Defendant(s) knowingly gave substantial assistance to the Defendant(s) that engaged in the wrongful conduct.

87.  At the time of providing the assistance, AMERICAN and

NATIONAL, of which PNC is liable as NATIONAL's successor by merger, were generally aware of their role as part of an overall tortious activity.

**Count VII:  DECLARATORY JUDGMENT – PNC VIOLATED H.R.S. § 667-5 through 667-10**

88.   Plaintiff realleges, as if fully set forth herein, each and every allegation in the preceding Paragraphs of the Complaint.

89.   On April 23, 2010, PNC conducted a non-judicial foreclosure of the Subject Property pursuant to H.R.S. § 667-5 through 667-10 despite the Complaint filed by Plaintiff on March 18, 2010.

90.   H.R.S. § 667-5.7 specifically provides that a successful bidder shall not be required to make a down payment of more than ten percent.  However, a down payment must be made.

91.   The legislative history shows that the initial percentage was set at 25% for the down payment, however after further deliberations, the State Legislature reduced the down payment required in non judicial foreclosure sales to 10%.

92.   PNC did not make a down payment as required by H.R.S. § 667-5.7.

93.   The alternate power of sale foreclosure process pursuant to H.R.S. § 667-21 through 667-42 specifically provides for credit bidding by the foreclosing mortgagee in H.R.S. § 667-29.

94.  The specific provision for credit bidding allowed for in the alternate power of sale foreclosure process pursuant to H.R.S. § 667-21 through 667-42 is not available in the non judicial foreclosure process pursuant to pursuant to H.R.S. § 667-5 through 667-10.

95.  Since PNC opted to pursue a non judicial foreclosure sale pursuant to H.R.S. § 667-5 through 667-10, this court must conclude that such sale violates the statute and is invalid.

**Count VIII – Injunctive Relief - Ejectment**

96.  This is an action for emergency and permanent injunctive relief seeking to restrain PNC from seeking an ejectment of Plaintiff from the subject property during the pendency of the action.  Unless restrained, PNC may eject Plaintiff from his home as PNC has already conducted a non judicial foreclosure sale of the Subject Property.  Such an ejectment would be to Plaintiff's great and irreparable injury for which pecuniary compensation would not afford adequate relief.  The result would be to ultimately remove the Plaintiff from his home while violating State law.

97.  Plaintiff has no adequate remedy at law to redress the harm complained of, and the ejectment of Plaintiff from the property is contrary to equity and good conscience in that such ejectment has been instituted by parties who violated State law.

98.  Plaintiff has no other plain, speedy or adequate remedy, and the injunctive relief prayed for is necessary and

17

appropriate at the time to prevent irreparable loss to Plaintiff. Plaintiff has suffered and will continue to suffer in the future, unless PNC's wrongful conduct is restrained and enjoined, because real property is inherently unique and it will be impossible for Plaintiff to determine the precise amount of damage he will suffer.

99. Because PNC violated State law, the harm they will experience is a result of their violation of said law, which cannot be undone by ignoring the violation. Therefore, there is no harm to said Defendant with the granting of the requested relief, and any claimed harm is substantially outweighed by the irreparable harm (loss of his home forever) to the Plaintiff if the relief requested herein is not granted.

100. The granting of the relief requested is in the public interest, as the consuming public, including Plaintiff, will continue to be harmed by the illegal and unlawful conduct of PNC if the relief requested is not granted.

101. With said Defendant violating State law, no bond should be required as a prerequisite, as there are no costs or other damages which could be contemplated with the granting of the requested relief for which a bond would otherwise be necessary.

**Prayer**

a. Grant such injunctive and ancillary relief as may be necessary to avert the likelihood of injury to Plaintiff during the pendency of this action and to preserve the possibility of

effective final relief.

b. As to Count I, 1) Award Plaintiff for RESPA violations pursuant to applicable law.

c. As to Count II, 1) Declare that each contract or agreement relating to the loan transaction is void and unenforceable at law or in equity pursuant to H.R.S. S 480-12; 2) for each UDAP engaged in by PNC, award Plaintiff statutory damages of not less than $1,000.00 or three times the damages Plaintiff sustained, whichever is greater; and 3) Enjoin PNC from engaging in acts or practices that violate H.R.S. §§ 480-2 and/or 481A-3.

d. As to Count III: 1) Declare that each contract or agreement relating to the loan transaction is void and unenforceable at law or in equity pursuant to H.R.S. S 480-12; 2) for each UDAP engaged in by AMERICAN, award Plaintiff statutory damages of not less than $1,000.00 or three times the damages Plaintiff sustained, whichever is greater; and 3) Enjoin AMERICAN from engaging in acts or practices that violate H.R.S. §§ 480-2 and/or 481A-3.

e. As to Counts IV, V and VI, 1) Declare that the loan transaction is void and order the relief described therein, and 2) Award Plaintiff actual and punitive damages in an amount to be determined at trial.

f. As to Count VII, 1) Declare that PNC violated H.R.S. § 667-5 through 667-10, 2) Declare the non judicial foreclosure sale

of Subject Property invalid, 3) Declare the Mortgagee's Quitclaim Deed Pursuant to Power of Sale invalid, and 4) Enjoin PNC from engaging in practices that violate H.R.S. § 667-5 through 667-10.

g. As to Count VIII, 1) Grant injunctive relief to Plaintiff by enjoining PNC from ejecting Plaintiff from the subject property, 2) Bar any attempt by PNC to bring an ejectment action against Plaintiff.

h. Grant such other relief that may be appropriate herein.

DATED:  Honolulu, Hawaii, September 30, 2010.

/s/ Keoni K. Agard

_____
KEONI K. AGARD
DEXTER K. KAIAMA
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

for the

DISTRICT OF HAWAI'I

| | |
|---|---|
| KENNETH SHIM | ) **CIVIL NO. 10-00156 SOM LEK** |
| | ) |
| Plaintiff, | ) **DEMAND FOR TRIAL BY JURY** |
| | ) |
| vs. | ) |
| | ) |
| PNC BANK, N.A., A NATIONAL | ) |
| ASSOCIATION; NATIONAL CITY | ) |
| MORTGAGE; AMERICAN MORTGAGE | ) |
| SERVICES LLC; H. T. NGUYEN; | ) |
| CATHY LEE; and DOES 1 through | ) |
| 20 inclusive, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

**DEMAND FOR TRIAL BY JURY**

COMES NOW Plaintiff KENNETH SHIM, by and through his attorneys, the undersigned, and hereby demand trial by jury on all issues.

Dated:  Honolulu, Hawaii, September 30, 2010.


/s/ Keoni K. Agard
_____
KEONI K. AGARD
DEXTER K. KAIAMA
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

for the

DISTRICT OF HAWAI'I

| | |
|---|---|
| KENNETH SHIM | ) **CIVIL NO. 10-00156 SOM LEK** |
| | ) |
| Plaintiff, | ) **SUMMONS** |
| | ) |
| vs. | ) |
| | ) |
| PNC BANK, N.A., A NATIONAL | ) |
| ASSOCIATION; NATIONAL CITY | ) |
| MORTGAGE; AMERICAN MORTGAGE | ) |
| SERVICES LLC; H. T. NGUYEN; | ) |
| CATHY LEE; and DOES 1 through | ) |
| 20 inclusive, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

**SUMMONS**

**Summons in a Civil Action**

TO THE ABOVE NAMED DEFENDANTS:

A lawsuit has been filed against you.

Within 21 days after service of the summons upon you (not counting the day you received it), you must serve on the Plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the Plaintiff's attorney, whose name and address is:

AGARD & KAIAMA, LLC
Keoni K. Agard       #2649
Dexter K. Kaiama    #4249
Harbor Tower at Harbor Squis
700 Richards Street, Suite 805
Honolulu, Hawai'i   96813
Tel. No. (808) 545-2922

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

The summons shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the general public, unless a judge of the above-entitled court permits, in writing on the summons, personal delivery during those hours.


                                    SUE BEITIA
                                    _____
                                    Name of Clerk of Court


Date: _____         _____
                                    Deputy Clerk's signature